UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SASHA SUGABERRY,<br><br>      Plaintiff,<br> v.<br><br>UNITED PARCEL SERVICE,<br><br>      Defendant. | CASE NO. 2:21-cv-00610-DGE<br><br>ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION |

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Compel Arbitration. (Dkt. No. 46.) The Court having considered the pleadings filed in support of and opposition[1] to the

---

[1] The Court notes that Plaintiff failed to file a response to the present motion. However, Plaintiff did file a response to Defendant's Motion to Modify the Case Schedule (Dkt. No. 49) where she stated "Plaintiff Sasha Sugaberry presents there is no arbitration clause in breached contract located on back of bill of lading, attached (Exhibit X) thereby negating Defendant's demand for arbitration." (Dkt. No. 51 at 2.) In abundance of caution, the Court construes this as her response to Defendant's Motion to Compel.

ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 1

motion and the remainder of the record hereby GRANTS Defendant's motion for the reasons discussed herein.

## II.   BACKGROUND

Plaintiff filed the present action in King County Superior Court before it was removed to federal court on May 6, 2021. (Dkt. No. 1.) Plaintiff alleges that in January 2020, she entered a contract with Defendant to ship seven parcels across the country from Seattle to Washington D.C. (Dkt. No. 1–3 at 1.) Plaintiff alleges that Defendant failed to accept all of her packages for shipment, failed to properly scan the package into Defendant's electronic system, and failed to properly deliver her packages to the appropriate location. (*Id.* at 1–3.)

As part of the paperwork to transport the parcels, Plaintiff signed several packaging slips (the paper "Source Documents") that included shipment details for the packages Plaintiff attempted to ship to Washington D.C. (Dkt. No. 7–1 at 35–36, 39–41.) The Source Documents referred to the UPS Tariff/Terms which contain a mandatory arbitration clause. (Dkt. No. 47–2 at 2.)

Defendant has filed the present Motion to Compel Arbitration. (Dkt. No. 46.) Defendant argues that Plaintiff agreed to have potential disputes be subject to mandatory arbitration when she agreed to the Tariff/Terms referred to in the paper Source Documents. (Dkt. No. 46 at 10.) The paper Source Documents provide that "All shipments are subject to the terms contained in the UPS Tariff/Terms and Conditions of Service, which are incorporated herein by reference and are available at UPS.com and local UPS offices." (Dkt. No. 47–2 at 2.) The Tariff/Terms include a clause requiring the parties to resolve all disputes by binding arbitration. (Dkt. No. 47–1 at 29.) Defendant argues that by filling out the paper Source Documents, Plaintiff assented to be bound by the Tariff/Terms. (Dkt. No. 46 at 10.)

Defendant also argues that Plaintiff assented to be bound by the Tariff/Terms through her use of the UPS website. (Dkt. No. 46 at 11–13.) Plaintiff was required to agree to the Tariff/Terms when she logged into her profile on UPS.com to ship her packages and when she created a user account on UPS.com. (Dkt. No. 47 at 4, 7.) On both occasions, pop-up notifications informed Plaintiff that she agreed to be bound by the Tariff/Terms and that they contain an obligation to arbitrate disputes. (*Id.* at 4–6.)

### III.     STANDARD

Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate disputes arising out of transactions involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party aggrieved by the failure or refusal to arbitrate under a written agreement for arbitration may petition the district court for an order directing arbitration to proceed as provided for in the agreement. 9 U.S.C. § 4. By its terms, section 4 of the FAA limits the court's discretion – the court must order the parties to proceed to arbitration only in accordance with the terms of their agreement. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985). Thus, the district court's role is limited to determining whether 1) a valid arbitration agreement exists and, if so, 2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the answer is yes to both questions, the court must enforce the agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) (quotations omitted).

## IV.     DISCUSSION

In deciding whether an agreement to arbitrate exists, the Court applies ordinary state-law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). A federal court sitting in diversity, as in this case, looks to the law of the forum state when making a choice of law determination. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Washington contract law therefore governs the question of whether the parties in this case entered into an agreement to arbitrate.

In what the Court construes as Plaintiff's response, she contends that there was a valid contract between the parties, however the contract did not contain a binding arbitration clause. (Dkt. No. 51 at 2.) Thus, the issue before the Court is whether the contract between the parties contained a valid arbitration clause and whether the clause encompasses the dispute at issue.

### A. A Valid Agreement to Arbitrate Exists Between the Parties

In Washington, where "the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 225 (Wash. 2009). The parties do not need to physically attach a document to a contract to incorporate it by reference. *Western Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 867 (Wash. App. 2000). Still, it must be clear that the parties had knowledge of and assented to the incorporated terms. *Id.* at 865. The party claiming incorporation by reference bears the burden of proving it. *Baarslag v. Hawkins*, 531 P.2d 1283, 1285 (Wash. App. 1975).

1	Here, it appears that Plaintiff assented to the Tariff/Terms, including the arbitration

2	clause.  In *Ferrelgas*, the court held that a "Trade Contract clearly and unequivocally

3	incorporate[d] the 'Contract Project Documents' and the 'Contract Documents'" by stating that

4	work would be performed "in accordance with the 'Project Contract Documents' or the 'Contract

5	Documents.'"  *Ferrellgas*, 7 P.3d at 865.  Here, like the Trade Contract in *Ferrellgas*, the paper

6	Source Documents clearly incorporate the Tariff/Terms which were available to the Plaintiff

7	online.  (Dkt. No. 47–2 at 2.)

8	Plaintiff filed five separate paper Source Documents (Dkt. No. 7–1 at 35–36, 39–41),

9	each of which stated that "[a]ll shipments are subject to the terms contained in the UPS

10	Tariff/Terms and Conditions of Service, which are available at UPS.com and local UPS offices."

11	Plaintiff filed "Exhibit X" in her response containing a photograph of the back of one of the

12	paper Source Documents she previously filed.  (Dkt. No. 51.)  Despite the photograph only

13	containing a partial image of the back of one of the documents, it is clear from previous filings

14	that both the front and back of the document contain references to the Tariff/Terms.  (*See* Dkt.

15	No. 7–1 at 35–36, 39–41.)

16	Furthermore, Plaintiff also manifested her acceptance of the Tariff/Terms through her use

17	of the UPS website and the pop-up notifications notifying her of the Tariff/Terms.  (Dkt. No. 46

18	at 11–13.)  Courts have upheld arbitration provisions in similar pop-up notifications in the past.

19	*See In re Wyze Data Incident Litigation*, 2020 WL 6202724, at *3 (W.D. Wash. Oct. 22, 2020)

20	(listing cases where similar "clickwrap"[2] arrangements have been upheld by courts).

---

[2] A clickwrap agreement "presents the user with a message . . . requiring that the user manifest . . . assent to the terms of the license agreement by clicking an icon.  The product cannot be obtained or used unless and until the icon is clicked."  *In re Wyze Data Incident Litgation*, 2020 WL 6202724, at *2 n.1 (W.D. Wash. Oct. 22, 2020) (citing *Specht v. Netscape*

ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 5

Thus, the Court finds that Plaintiff is subject to the arbitration provision contained in the Tariff/Terms.

**B. The Agreement to Arbitrate Encompasses the Present Dispute**

To require arbitration, Plaintiff's factual allegations need only "touch matters" covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (citing *Mitsubishi Motors,* 473 U.S. 614, 624 n. 13 (1985)) (noting that "insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, [we] properly resolve[ ] any doubts in favor of arbitrability").

The arbitration provision within the Tariff/Terms applies to "[a]ny controversy or claim . . . arising out of or related to the provision of services by UPS[.]" (Dkt. No. 47–1 at 29.) Plaintiff seeks recovery for damages caused by Defendant's mishandling of her packages which UPS was moving for her as part of a services agreement to transport her parcels across the country. These claims would fall within the provision of services provided by UPS. Therefore, the Court finds that Plaintiff's claims are covered by the arbitration provision within the Tariff/Terms, which requires the submission of Plaintiff's claims to arbitration.

**V.   CONCLUSION**

Accordingly, and having considered Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's Motion to Compel Arbitration (Dkt. No. 46) is GRANTED.

---

*Commc'ns Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002)).

1. This case is STAYED and administratively closed.  The parties shall move to dismiss or reopen the case upon the completion of arbitration.

2. Defendant's Motion to Modify the Case Schedule (Dkt. No. 49) is now moot.

Dated this 29th day of March 2022.

David G. Estudillo
United States District Judge

ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION - 7